[No. 4497.   Decided April 6, 1903.]

JOHN J. DECKER, *Appellant,* v. STIMSON MILL COMPANY,
                        *Respondent.*

MASTER AND SERVANT — SAFE PLACE TO WORK.

An employee of a saw mill who was injured by the giving way
of a handrail against which he fell in attempting to cant a log
on the log chute, cannot recover damages from his employer,
where it appears that the rail was sufficient for its purpose—
that of steadying persons passing up and down the chute—and
that the accident of falling against the rail while canting logs
was one which a reasonably careful employer could not be held
to anticipate.

Appeal from Superior Court, King County.—Hon.
WILLIAM R. BELL, Judge.   Affirmed.

*James E. Bradford (George Cudhie* and *E. M. Farmer,*
of counsel), for appellant.

*Root, Palmer & Brown,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—Action for personal injuries.   The lower
court granted a nonsuit, on motion of respondent, after
the plaintiff's evidence was all in, and dismissed the
action.   The appellant was employed by respondent for
the purpose of rolling logs from a log chute to a logging
deck in respondent's saw mill.   Appellant had been en-
gaged in this and other work for respondent several
months, and was an experienced man at the business.   On
the second day of October, 1901, appellant undertook to
roll a long log from the chute to the logging deck by means
of a canthook, when he fell, striking against a railing which
gave way, and he was precipitated to the ground below—
some eighteen feet—and severely injured.   The mill and

log deck extended in a northerly and southerly direction. The log deck consisted of three main parts: (1) The easterly part was a passage way about two feet wide extending from the water below on an inclined plane to the mill above. Along the outer side of this passage way was a rail made of timbers two by three inches. This rail was fastened to the top of upright pieces of the same size, six feet apart and about three feet in height. At the bottom of the passageway, on the outer side thereof, was a board one by twelve inches, placed edgewise and extending the length of the passageway, fastened to the upright pieces. (2) Next to the passageway on the west was the log chute about eight feet wide. This log chute extended from the water to the mill, a distance of sixty feet, and on into the mill about thirty feet. On each side of this log chute were guides made by placing wide pieces of timber on the floor of the chute, and narrower pieces on top of these to the height of about fifteen or twenty inches. The object of these guides was to keep the logs within the chute. (3) The log deck proper was to the west of the log chute, at the northerly end thereof, within the mill. It was a platform about ten feet wide and thirty feet long. To the west of the log deck was a carriage, upon which the logs were carried to the saws. The log deck and the chute at the mill were about eighteen feet above the ground. At the time of the accident four small logs had been drawn up the log chute into the mill. Three of these logs were about thirty-two feet long, and the other one, lying to the east, was about forty feet in length. Appellant had rolled the three shorter logs from the chute to the log deck. He was attempting to roll the longer one when the accident occurred. This log, on account of its length, extended several feet outside of the mill. The chute inside of the

mill was nearly level, so that the part of the log which projected outside of the mill was a little above the floor of the chute. . Appellant went outside with his canthook, so as to get a better hold of the log. He was standing in the passageway on the east of the log, attempting to roll the log west on to the log deck, when in some manner his canthook slipped, and he fell against the hand rail at his rear, on the east of the passageway. . This rail, by force of his weight, gave way, and he fell below. The negligence claimed is (1) in the improper and negligent construction of the rail; (2) negligent use by respondent of unfit and unsuitable material in its construction; (3) negligently allowing said materials to be and remain, at the time said railing was built and at the time of the accident, cross-grained, weak, cracked, rotten, split, and unsound; (4) negligently failing to properly repair the same. Plaintiff's evidence showed that this rail was constructed for a hand rail in going up and down from the mill to the mill pond; that the twelve-inch board at the bottom, and parallel with the rail, was for the purpose of preventing chains which were thrown down the passage way from falling off at the side. It also showed that one of the upright pieces which held the rail, and the one which gave way, was cracked or checked at the bottom, where it was fastened to timbers supporting the passageway, and was somewhat decayed. It also showed that the railing had been inspected on the evening before the accident, and at that time was rigid and firm; that all the materials used in the construction of the rail, except the upright piece above referred to, were sound, and of the character usually employed for such purpose. One of plaintiff's witnesses testified that the upright piece which gave way had been nailed by driving three nails in a row close together at the time it was

constructed, and that these nails had checked or cracked the upright piece, and that this was improper construction. He also testified that, if this upright piece had been prop-- erly nailed, it would have withstood the force of a man the size of appellant falling three feet against it. Appel-- lant testified that he fell the distance of about one foot against it. Appellant also testified that it was usual for- men working as he was to go where he did to roll long logs.

The pivotal question in this case is, was the respondent bound to anticipate accidents of this kind, and provide a railing strong enough to hold the weight of an employee- falling against it? The railing in this case was sufficient for the purpose for which it was constructed, viz., as a hand rail for passers along the passageway. It was not, sufficient as a protection against accidents of the kind. which happened to appellant. There is no doubt that it was the duty of respondent to furnish appellant with a reasonably safe place in which to work, and to warn him of hidden or unseen dangers which were to him unknown, and which were or should have been known to the employer. If there had been no railing in the place where- this one was, and the accident had happened as it did, respondent would not have been liable, because the place- would have been reasonably safe without the railing, and appellant would have known as much about its dangerous character as his employer, and would have assumed the- obvious risks. *Bullivant v. Spokane,* 14 Wash. 577 (45 Pac. 42); *Moulton v. Gage,* 138 Mass. 390; *Hoffman v. American Foundry Co.,* 18 Wash. 290 (51 Pac. 385); 1 Bailey, Master & Servant, § 62.

Whether or not it was the duty of the employer to place· a solid rail along the passageway, not only as a protection for those whose duty it was to go up and down this way,,

but also as a protection to persons employed in the chute and logging deck as appellant was employed, depends upon the question whether the respondent company, in the exercise of ordinary care and judgment, should have foreseen that such an accident might take place. The plaintiff himself testified upon this question. He said, in substance that the canthook frequently slips in such work, and that the operator sometimes loses his balance and falls. He also said that he never knew a man to fall against a railing before in such work, that he did not expect any such accident, and that no one would expect a man to fall against a railing. Other of his witnesses testified to the same effect. And this seems to us reasonable. Where a man is working upon the ground, he does not exercise the same care that he does when working upon a high platform. When he is working in the center of a high platform, he does not exercise the same care as when he is near the edge of it. He will naturally be more careful as the place is nearer obvious danger. No doubt for that reason the appellant never heard of such an accident, and the respondent did not, and ordinarily would not, anticipate it. If a reasonably careful employee would not anticipate falling against such a railing, a reasonably careful employer could not be held to anticipate it. The employer is not an insurer of his employees. When he has furnished a reasonably safe place for his employees to work in, his duty is done. A rail of the kind in question is notice of the danger line. It serves as a warning to that effect, in addition to its use as a hand rail. Since the respondent was not bound to construct the rail for the purpose of preventing employees from falling off the platform, there was no obligation to make it strong enough or high enough to prevent one falling over or through it. There can be

no doubt that where a rail is constructed for a particular purpose, known to the employees, it must be sufficient to accomplish that purpose, and a person using it may confidently rely upon its safety for such purpose. But where it is constructed for a purpose which is known, it cannot be relied upon for another and different purpose—one which would be more severe upon it. For example, this railing was constructed as a hand rail to assist employees whose duty it was to pass up and down the inclined passageway. This purpose was known to appellant. It is conceded to have been sufficient for the purpose. If a number of employees had used it as a place to sit upon or rest upon without knowledge of the company, and it had given way, or if one workman had forced another through it, the respondent certainly would not be liable under such circumstances because it was not constructed for such purposes, and it could not be reasonably anticipated that it would be put to any such use. It is true that questions of this kind are usually questions of fact for the jury, but, where the facts and circumstances surrounding the case are such that reasonable men could not reasonably and properly find negligence therefrom, then it is the duty of the court to order a nonsuit. We think the court was right in this case.

Several questions relating to the admission of evidence in the case are argued in appellant's brief. But the ruling upon the merits above discussed makes it unnecessary to consider these assignments.

The judgment is therefore affirmed.

FULLERTON, C. J., and HADLEY, DUNBAR and ANDERS, JJ., concur.