[No. 6175.  Decided December 13, 1906.]

PHILIP L. GRAVES, *by Marie L. Graves, his Guardian Ad Litem, Respondent,* v. WASHINGTON WATER POWER COMPANY, *Appellant.*[1]

ELECTRICITY—NEGLIGENCE—INJURY TO TRESPASSERS.  An electric company is not liable to a boy who was injured while climbing after bird's nests, up the steel lattice work of a high pier supporting a public bridge, by reason of coming in contact with one of the company's live electric wires, which was thirty feet from the ground, properly insulated and eighteen inches from the pier, where the company had no notice that children were in the habit of climbing up such piers; since the place was not one where the public might rightfully go for business or pleasure, nor one that was rendered attractive to children by any act or structure of the company, and since the company could not have reasonably anticipated the presence of children at such place.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered March 10, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for personal injuries sustained through contact with a live electric wire. Reversed.

*H. M. Stephens,* for appellant, contended, among other things, that the doctrine of the turntable cases should not be extended.  *Clark v. Northern Pac. R. Co.,* 29 Wash. 139, 69 Pac. 636; *Harris v. Cowles,* 38 Wash. 331, 80 Pac. 537, 107 Am. St. 847; *Paolino v. McKendall,* 24 R. I. 432, 53 Atl. 268, 96 Am. St. 736, 60 L. R. A. 133; *Erickson v. Great Northern R. Co.,* 82 Minn. 60, 84 N. W. 462, 83 Am. St. 410, 51 L. R. A. 645; *O'Leary v. Brooks Elevator Co.,* 7 N. D. 554, 75 N. W. 919, 41 L. R. A. 677; *Uthermohlen v. Bogg's Run Co.,* 50 W. Va. 457, 40 S. E. 410, 88 Am. St. 884, 55 L. R. A. 911; *Brinkley Car Works & Mfg. Co. v.*

[1] Reported in 87 Pac. 956.

*Cooper*, 70 Ark. 331, 67 S. W. 752, 57 L. R. A. 724; *Louisville etc. R. Co. v. Hart*, 24 Ky. Law 1123, 70 S. W. 830; *Hughes v. Boston etc. R. Co.*, 71 N. H. 279, 51 Atl. 1070, 93 Am. St. 518; *Peninsular Trust Co. v. Grand Rapids*, 131 Mich. 571, 92 N. W. 38; *Simonton v. Citizens' Elec. L. etc. Co.*, 28 Tex. Civ. App. 330, 67 S. W. 530; *Loftus v. Dehail*, 133 Cal. 214, 65 Pac. 379; *Peters v. Bowman*, 115 Cal. 345, 47 Pac. 113, 598, 56 Am. St. 106; *Walsh v. Hayes*, 72 Conn. 397, 44 Atl. 725; *Chesley v. Rocheford*, 4 Neb. 768, 96 N. W. 241; *Richards v. Connell*, 45 Neb. 467, 63 N. W. 915; *Conway v. Vezzetti*, 69 N. J. L. 235, 54 Atl. 226; *Smith v. Hopkins*, 120 Fed. 921; *McCabe v. American Woolen Co.*, 132 Fed. 1006; *Gillespie v. McGowan*, 100 Pa. St. 144, 45 Am. Rep. 365; *Klix v. Nieman*, 68 Wis. 271, 32 N. W. 223, 60 Am. Rep. 854; *Ryan v. Towar*, 128 Mich. 463, 87 N. W. 644, 92 Am. St. 481, 55 L. R. A. 310. The respondent was not a licensee, but a trespasser to whom the appellant did not owe any duty. 15 Cyc. 475; 10 Am. & Eng. Ency. Law (2d ed.), pp. 871, 872; *Bennett v. Railway Co.*, 102 U. S. 577, 26 L. Ed. 235; *McConkey v. Oregon R. & Nav. Co.*, 35 Wash. 55, 76 Pac. 526; *Hector v. Boston Elec. L. Co.*, 161 Mass. 558, 57 N. E. 733, 55 L. R. A. 554; *Id.*, 174 Mass. 212, 54 N. E. 539, 75 Am. St. 300; *Cumberland Tel. etc. Co. v. Martin's Adm'r*, 116 Ky. 554, 76 S. W. 394, 77 S. W. 718, 105 Am. St. 229, 63 L. R. A. 469; *New Omaha etc. Elec. L. Co. v. Anderson* (*Neb.*), 102 N. W. 89; *Chesley v. Rocheford, supra; Fredenburg v. Baer*, 89 Minn. 241, 94 N. W. 683; *McCaughna v. Owosso & Corunna Elec Co.*, 129 Mich. 407, 89 N. W. 73, 95 Am. St. 441; *Sullivan v. Boston etc. R. Co.*, 156 Mass. 378, 31 N. E. 128; *Sias v. Lowell etc. St. R. Co.*, 179 Mass. 343, 60 N. E. 974; *Augusta R. Co. v. Andrews*, 89 Ga. 653, 16 S. E. 203; *Rowe v. Taylorville Elec. Co.*, 213 Ill. 318, 72 N. E. 711; *South Side Elevated R. Co. v. Nesvig*, 214 Ill. 463, 73 N. E. 749. The respondent failed to show any defective insulation. *Smith v. East End Elec. L. Co.*, 198 Pa. St. 19, 47 Atl. 1123.

*O. C. Moore* and *F. T. Post*, for respondent, *inter alia*, contended that plaintiff's theory of the case is that the law imposes upon the defendant, dealing in or handling such a highly dangerous element as electricity, the duty of exercising the highest degree of care to protect persons from danger in all places where the general public may rightfully go for purposes of business or pleasure. *Nelson v. McLellan*, 31 Wash. 208, 71 Pac. 747, 96 Am. St. 902; *Anderson v. Seattle-Tacoma Interurban R. Co.*, 36 Wash. 387, 78 Pac. 1013, 104 Am. St. 962; *Rush v. Spokane Falls & N. R. Co.*, 23 Wash. 501, 63 Pac. 500; *Roberts v. Spokane Street R. Co.*, 23 Wash. 325, 63 Pac. 506, 54 L. R. A. 184. *Sic utere tuo ut alienum non laedas.* Jaggard, Torts, p. 832; *Klepsch v. Donald*, 4 Wash. 436, 30 Pac. 991, 31 Am. St. 936. It was the duty of the defendant to keep the wires perfectly insulated. Joyce, Electrical Law, § 445; *Thomas v. Wheeling Elec. Co.*, 54 W. Va. 395, 46 S. E. 217; *McLaughlin v. Louisville Elec. L. Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; *Nelson v. Branford L. & W. Co.*, 75 Conn. 548, 54 Atl. 303; *Denver Consol. Elec. Co. v. Lawrence*, 31 Colo. 301, 73 Pac. 39; *Metropolitan Street R. Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807; see, also, *Consolidated Elec. L. & P. Co. v. Healy*, 65 Kan. 798, 70 Pac. 884; *Nelson v. Branford L. & W. Co.*, *supra; Commonwealth Elec. Co. v. Melville*, 210 Ill. 70, 70 N. E. 1052; *Daltry v. Media Elec. L. etc. Co.*, 208 Pa. 414, 57 Atl. 1134; *Giraudi v. Elec. Imp. Co.*, 107 Cal. 120, 40 Pac. 108, 48 Am. St. 114, 29 L. R. A. 596; *Brown v. Edison Elec. etc. Co.*, 90 Md. 400, 45 Atl. 182, 78 Am. St. 442, 46 L. R. A. 745; *Potts v. Shreveport Belt R. Co.*, 110 La. 1, 34 South. 103, 98 Am. St. 452; *Bourke v. Butte Elec. Co.* (Mont.), 83 Pac. 470. The plaintiff had a right to assume or believe that the wires were safe. *Perham v. Portland General Elec. Co.*, 33 Ore. 451, 53 Pac. 14, 24, 72 Am. St. 730, 40 L. R. A. 799; *Clements v. Louisiana Elec. L. Co.*, 44 La. Ann. 695, 11 South. 51, 16 L. R. A. 43; *Ander-*

*son v. Seattle-Tacoma Interurban R. Co.,* and *Thomas v. Wheeling Elec. Co., supra.* The objection that the plaintiff was a trespasser or that the company could not have anticipated that he would come in contact with the wires is answered in *Wittleder v. Citizens' Elec. etc. Co.,* 47 App. Div. 543, 62 N. Y. Supp. 297 and *Commonwealth Elec. Co. v. Melville, supra.* Appellant's negligence in permitting a dangerously charged wire to remain in close proximity to the bridge was the proximate cause of the accident. *Walters v. Denver Consol. Elec. L. Co.,* 12 Colo. 151, 54 Pac. 960; *Potts v. Shreveport R. Co.,* and *Wittleder v. Citizens' Elec. etc. Co., supra.*

ROOT, J.—This appeal is from a judgment against appellant for personal injuries sustained by respondent, a boy fifteen years of age. The complaint sets forth that respondent was injured by reason of contact with the wires of appellant, which were charged with electricity; that the power house of appellant is immediately east of what is known as the Monroe street bridge, which spans the Spokane river, and connects Monroe street on the north and south sides of said river; that said bridge is a public thoroughfare, and is the property of the city of Spokane; that the driveway, roadway and foot paths of said bridge are at the height of about one hundred feet from the water in said river; that said bridge is supported by piers built of plates of steel at a slight angle, with straps to and from such plates, set at an angle, so that same can be used as a ladder, which alleged ladders are inviting and attractive to small boys to climb and play thereon; that some of said piers and alleged ladders are near the power house of appellant; that appellant's electric wires are in close proximity to one of said piers; that by reason of the construction of said piers in said ladder-like form, in close proximity to said river, and that at certain seasons of the year pigeons are in the habit of nesting and rearing their young on the beams and around the top of said bridge, said bridge and the supports thereof were attractive to small boys, and

that small boys frequented same for playing and climbing thereon, and had done so for a long time, and that appellant knew, or should have known, thereof.

It is further alleged that on March 10, 1905, respondent climbed one of said piers, and when about thirty feet high, something touched his coat, and he involuntarily put out his hand and took hold of a live wire and received the shock and injury complained of, and that as respondent fell he came in contact with other wires; that his fingers and thumb had to be amputated. A demurrer was interposed to the complaint, and overruled. Appellant answered, denying the material allegations of the complaint, except formal matters and those covered by the following admissions:

"That respondent was at least fifteen years old at the time of the accident; that appellant is a corporation and engaged in manufacturing electricity and furnishing and selling same; that its power house is on the south bank of the Spokane river, immediately east of the piers of the Monroe street bridge; that the top of said bridge is used as a public thoroughfare; that the roadway or top of said bridge is at a great height from the ground and water underneath same; that said bridge is held in position by a series of steel supports of great height; that the said supports, in some places, are held together by steel plates or slats of steel, which slats or plates are run from one support to another on an angle; that on and prior to March 10, 1905, poles and wires were maintained at the place complained of, and that some of the wires were constantly charged with electricity."

The defense of contributory negligence was pleaded, and it was alleged that appellant had used the best means of insulation known to science.

There is but little controversy between the parties as to the character of the bridge and the location and use of the electric wires. It appeared from the evidence that pigeons were in the habit of nesting about the bridge, and that boys sometimes climbed the piers in order to catch the pigeons or find their nests, and sometimes as a matter of sport and

in playing such games as "Follow the leader." It appears
that near the foot of the piers, on the other side of the river,
there were good play grounds, but such was not the case on
the side where respondent was injured, although boys were
frequently about there. It was in evidence that boys were
seen playing about the bridge at different times during the
period of two or three years immediately prior to this acci-
dent. It does not appear that they were in the habit of
climbing the pier near which the wires were, and from which
respondent fell. The evidence does not show that appellant
had actual knowledge of boys climbing these piers, nor that
there was such an amount of climbing near the wires as would
impute knowledge to it thereof. Respondent's witness Mc-
Cormick, bridge foreman and inspector for the city, testi-
fied that the bridge was one hundred and thirty-eight feet
above the water in the river; that the lattice work was sharp
and hard on the feet and hands, and did not make a good
ladder; that he had sometimes seen boys around the bridge,
usually at the other end, and had driven them away; that he
had never seen boys on any of the piers higher than twenty-
three or twenty-four feet. This evidence did not seem to be
disputed in any material part. Another of respondent's
witnesses, one Rogers, a policeman of the city of Spokane,
testified that his duties required him to be near this bridge;
that he had seen boys playing about the bridge off and on
for two or three years; that he had orders to chase them
away, and did so. He had never seen them climb the piers,
but had seen them on top of the bridge at each end; that he
had orders to keep the boys away from there. One Gannon,
a witness for the respondent, had seen boys climbing all over
the bridge, but usually at places other than where this acci-
dent occurred. He worked for the city and was in the habit
of chasing the boys away. Respondent testified that he was
playing "hookey" from school; that he saw some pigeons
flying about the bridge, and climbed one of the piers; that

he felt something touch the back of his coat, and reaching around, and without seeing the wires, involuntarily took hold of one, and was thrown to the ground by the shock, his hand being badly burned; that he could have seen the wire had he looked. He stated that he had never, previous to that time, been under or climbed about the bridge.

It appears from the evidence that the electric wires do not run exactly straight or parallel with the bridge, but are nearer to this particular pier than to any other. Respondent was thirty or more feet from the ground when he fell. The plates or strips of steel were twelve to fifteen inches long, two or three inches wide, one-fourth of an inch thick, with sharp corners or edges, and fastened upon the steel piers so as to form sharp angles, rather than being attached at right angles, as is the case with the rungs of an ordinary ladder. The wire nearest to the pier was fifteen and one-half inches distant therefrom, and was on the lowest arm of the electric pole, and was insulated and carried comparatively low voltage. The next wire above was eighteen inches from the pier. From the complaint and evidence we think it unquestionably appears that respondent took hold of a wire some distance above those two wires, which was heavily charged with electricity, and some thirty inches from the bridge pier.

It is urged by appellant that the complaint does not state a cause of action, and that the evidence introduced is not sufficient to support any verdict or judgment in favor of respondent. It is contended that the respondent was a trespasser, toward whom the appellant owed no duty other than to avoid wilful injury; that its wires were being used for a legitimate purpose, in a place where they had authority to place them, and that there is nothing in the circumstances alleged or proven sufficient to fix liability upon it for the injuries sustained by respondent. Respondent meets these contentions of appellant by the assertion of several propositions, which we will consider *seriatim*.

He urges:

· (1)  "The law imposes on persons manufacturing and dealing in or handling highly dangerous elements and substances, such as electricity and dynamite, the duty of exercising the highest degree of care to protect persons from danger in all places where the general public may rightfully go for purposes of business or pleasure."

Accepting this as a correct statement of the law, let us apply it to the facts of this case.  Can we say that "the general public may rightfully go, for purposes of business or pleasure," up or down the side of a high and almost perpendicular pier of a public bridge across a river, climbing upon the diagonally attached slats of steel, as did respondent?  Was it ever contemplated that such a use should be made of the piers of this bridge by the general public?  We apprehend not.  The bridge was constructed for the purpose of furnishing the public a means of crossing a goodly sized river. It was intended that the public should walk or ride upon the roadway at the top of said bridge.  The lattice work upon the sides of these piers was not intended to constitute ladders, or furnish means of access to or from the top of the bridge. The public was not invited nor expected to use such lattice work for such a purpose.  No one, other than an employee or agent of the city, entrusted with some duty in connection with the inspection, supervision, care, or repairing of said bridge, would have any authority to climb up or down said lattice work.  This being true, it follows that respondent, as one of the general public, had no authority justifying his presence at the place where he was injured.  It is not pretended that he was an employee or agent of the city, or that he had any authority therefrom to be there.  He was not even a licensee, but was a mere trespasser.  It will, therefore, be seen that the proposition of law urged by respondent, as above set forth, cannot avail him under the circumstances of this case.

(2.)  Respondent urges, "that it may always be assumed that every person has performed his duty, under the law, and hence that the placing of wires or other electrical apparatus in close proximity to places or structures where persons rightfully go for business or pleasure constitutes an implied assurance of safety, and an invitation to take hold of, or come in contact with, such wires, if such persons may for any reason choose to do so."

This proposition of law, even if sound—which, in its entirety, we do not believe—would not apply to the facts of this case, for the reason, as already stated, that respondent did not "rightfully go, for business or pleasure," up or down this pier.  People who have occasion to use wires highly charged with electricity must be held to a high degree of care, and when they place those wires in close proximity to places or structures where other persons may rightfully go for business or pleasure, it is incumbent upon them to use a high degree of care to prevent any person from being injured by coming in contact therewith.  But we cannot go to the extent of saying that the presence of such wires in such a place constitutes an invitation to take hold of, or come in contact with, them.  When a person, rightfully or wrongfully in such a place, sees a wire which he knows may be highly dangerous, it is his duty to avoid coming in contact therewith, rather than to accept its presence as an invitation to make such contact.

(3.)  Respondent urges that this bridge, and the piers thereof and immediate surroundings, and the presence of the pigeons, rendered the situation an attractive one for boys, and that the appellant was under obligations to keep its dangerous wires out of the reach of said boys, or to keep them so completely insulated that they would be harmless in case a boy should take hold of, or come in contact with them. While attorneys for respondent assert, in their brief, that they do not rely upon the "turntable doctrine," it would seem that they invoke principles that are nearly akin thereto.  It

will be noticed that it is not alleged, proven, or urged that respondent was allured to the place of his injury by reason of any attraction connected with any structure, device, or property of appellant. The things that constituted the attraction, which it is claimed drew him to this place, were features connected with the river, the bridge and the pigeons, and were matters for the existence of which appellant was not responsible.

(4.) It is urged by respondent that, while he may have been a trespasser as to the owner of the bridge, the city, he was not a trespasser as against the appellant. If, under given circumstances, a person in maintaining a dangerous agency upon his own premises would not be liable for injuries therefrom to a trespasser upon said premises, and would not be holden to anticipate the presence of such trespasser, we do not see why he should be holden to foresee the presence of a trespasser upon adjoining property, or why he should be under obligation to guard against the possible presence of one trespassing upon the adjoining premises so near as to be injured by said dangerous agency. Ordinarily a person whose duty it is to furnish protection to others against a dangerous agency fully complies with the law when he provides such a protection as will safely guard against any contingency that is reasonably to be anticipated. He is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated as likely to occur. *Decker v. Stimson Mill Co.*, 31 Wash. 522, 72 Pac. 98; *Johnston v. Northern Lum. Co.*, 42 Wash. 230, 84 Pac. 627; *Daffron v. Majestic Laundry*, 41 Wash. 65, 82 Pac. 1089.

If the appellant had constructive notice that boys were playing about, and sometimes climbing upon, the bridge, the fact of the city's officers being there to chase them away would likewise be known. The carrying of dangerous electric wires upon high poles, or the burying of them in trenches, readily occurs to one as an appropriate requisite

for the safety of people who may have occasion to come into the vicinity of said wires.   But if a boy, through curiosity, should dig up a wire buried in the ground, or should climb to the top of a high pole, and, in either case, take hold of a "live" wire and be injured, would it be seriously contended that this was a circumstance which the owner of the wire should be held to have anticipated and guarded against?   To be sure, it would be a possible contingency; but would it be so probable that any reasonably prudent person would feel it necessary to be guarded against?

The respondent invokes the rule that one must so use his own as not to injure another.   This is a wholesome and salutary principle of law; but it must have some limitations.   It does not mean that a man must operate his machinery, appliances, or other agencies in such a manner as to absolutely insure and guarantee the safety of every other person.   Such owner, in the operation of such agencies, is held to use that degree of care, foresight, and discretion which a person of ordinary care and prudence would use under the same circumstances.   As a matter of law, it may be said that a person of ordinary care and prudence, in the operation of an agency so dangerous as electricity, would and should be exceedingly careful, and so arrange the means of handling and transmitting this powerful and mysterious element as to protect from harm any person or persons whom he might reasonably expect to be in a position to receive harm therefrom.   But to say that the owner or operator of an electric plant should foresee and anticipate the presence of children or others in places where the ordinarily prudent, careful, and foreseeing person would not expect, or deem it likely for them to be, would impose a burden and responsibility for which there is no justification in law.

We do not think it can be said that this appellant should have anticipated that boys would climb up this almost perpendicular pier, and from it reach over and take hold of the

electric wires strung upon its poles, thirty or more feet above the ground, or that the city's watchmen and other servants there stationed would permit such an occurrence. If the company's responsibility extended this far, it would be difficult to say where a limit could be fixed. In this state we see electric wires stretched on poles through our towns and cities, and along highways, through farms, orchards and forests in the country. Can it be held that companies operating these wires must keep them out of reaching distance of every high tree, building, fence, wall, pole, or other place of elevation into, or upon, which a boy may possibly be allured by birds' nests or other attractions? Suppose birds should build their nests under the eaves of a sawmill that had a ladder attached to its side, and a boy, attracted by said ladder and birds' nests, should climb the ladder and purposely or inadvertently thrust his hand through a window against a running saw in the upper story of said mill, would the owner of the mill be liable for the boy's injury? Suppose a merchant should keep dynamite, in order to have it out of the way of people, upon the roof of his store, and some boy, without the consent and against the wishes of the owner of adjoining premises, should climb a tree thereon for birds and, while up in the tree, reach over and explode some dynamite, would the owner thereof be holden for the injury thereby occasioned to the boy? Regardless of what the name may be, it seems to us that the contention of respondent is an invocation for an extension of the "turntable doctrine" beyond the limits permitted by the law, as heretofore announced by this and the great majority of the courts.

In the case of *Clark v. Northern Pac. R. Co.*, 29 Wash. 139, 69 Pac. 636, this court said:

"Appellant also cites what are known as the 'turntable cases.' These cases are based upon the theory that a turntable is a machine of such a nature as to attract children to play with it, and, being inherently dangerous for children to handle, negligence is predicated upon the failure to lock

it or securely fasten it so that it cannot be moved by children. The same principle has been applied where other structures or conditions existed, but the doctrine has not been uniformly adopted by American courts, and it has, indeed, been severely criticized. In Beach on Contributory Negligence (3d ed.), § 51a, the author observes that the trend of the more recent decisions is against it, and many cases are cited. This court applied the rule in a turntable case in *Ilwaco R. & Nav. Co. v. Hedrick*, 1 Wash. 446 (25 Pac. 335, 22 Am. St. Rep. 169) ; but, in view of the more modern tendency of the courts, we should, however, hesitate to extend the rule as one of general application to other conditions. For especially forcible reasoning upon this subject we refer to *Delaware L. & W. R. R. Co. v. Reich*, 61 N. J. Law 635 (40 Atl. 682, 41 L. R. A. 831, 68 Am. St. Rep. 727). The respondent in the case at bar had not placed upon its premises a dangerous machine or device, that was in its nature and at once particularly attractive to children. The deceased boy neither meddled with nor was he injured by any such instrument. The attractive thing which it is claimed respondent permitted upon its premises was the show."

A case involving similar consideration was that of *Curtis v. Tenino Stone Quarries*, 37 Wash. 355, 79 Pac. 955, where the court spoke as follows:

"To hold, as a general and universal rule of law, that the owners of mills and factories must so construct and maintain their premises as to be reasonably safe for trespassers, infants or adults, regardless of how they may gain admission, would be destructive of all industry and all property rights."

Discussing the doctrine now invoked by respondent, this court, in the case of *Harris v. Cowles*, 38 Wash. 331, 80 Pac. 537, 107 Am. St. 847, employed this language:

"Whatever may be said of the wisdom of that rule, as applied to the one condition, established as it was by judicial decisions, but severely criticized by others refusing to follow it, still, when we contemplate its extension to the manifold other relations and conditions which arise in the affairs of

life, we must see that it would be productive of litigation to such an extent as would greatly endanger the security of property interests. It is aptly suggested by respondent, in his brief, that swings, teeter boards, lumber piles, fences, gates, walls, buildings, trees, hanging on vehicles, and numerous other similar things are attractive to children. It will, therefore, be seen that, if this doctrine should be made one of general application for the protection of children against everything that may be especially attractive to them, it would result in requiring all property holders to assume toward children who may be attracted to their premises a degree of duty and care which properly belongs to parents or guardians."

The unfortunate accident which befell respondent was an unusual and extraordinary one, which we do not believe appellant could reasonably have anticipated. Under the pleadings and all of the evidence, construed as favorably as possible in behalf of the respondent, we think liability on the part of appellant for this boy's injury is not established.

The judgment of the honorable superior court is reversed, and the cause remanded with instructions to dismiss the action.

MOUNT, C. J., DUNBAR, RUDKIN, FULLERTON, HADLEY, and CROW, JJ., concur.