[No. 11911.  Department One.  November 16, 1914.]

WILLIAM ARNOLD KEMPF, *by his Guardian, etc., Respondent,*
v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY,
*Appellant.*[1]

ELECTRICITY—INJURIES—DEGREE OF CARE—LIABILITY—NEGLIGENCE
—EVIDENCE—SUFFICIENCY.  Although a trolley wire, carrying 6,600
volts, is an instrument of great danger, requiring the highest degree
of care, in order to charge the company, the injury must be one that
a person of ordinary prudence would reasonably and naturally have
anticipated; hence the company is not liable, where a boy received
a shock, when a wire, held in his hand while playing "telephone"
across a deep cut 35 feet deep and 45 feet wide, fell across the trolley
line below, in an attempt to throw the other end of the wire across
the cut; especially where there was no evidence that boys had been
accustomed to play such games involving communications across the
cut.

Appeal from a judgment of the superior court for Spokane
county, Blake, J., entered November 14, 1913, upon the
verdict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by a child through an electric
shock from a street railway trolley.  Reversed.

*Graves, Kizer & Graves,* for appellant.

*Robertson & Miller* and *F. W. Girand,* for respondent.

MAIN, J.—This action was instituted for the purpose of
recovering damages for personal injuries sustained through
the alleged negligence of the defendant.  The cause was tried
to a jury, and resulted in a verdict and judgment in favor
of the plaintiff in the sum of $2,000.  The defendant ap-
peals.

The facts are, in substance, as follows:  On April 12, 1911,
and for some years prior thereto, the defendant owned and
operated an electric railway.  This railway line extends along
and across certain streets of the city of Spokane.  The loca-
tion of the accident was at or near the intersection of Fifth

[1]Reported in 144 Pac. 77.

avenue and Hogan street. Hogan street extends north and south, and Fifth avenue east and west. The railway line crosses Fifth avenue a little east of the intersection of that street with Hogan street. At the southwest corner of these two streets, there is a vacant lot or tract of ground upon which boys, and sometimes men, of the neighborhood play ball. South of Fifth avenue at this point and back a little distance from the street is the railway company's transformer station. The streets at this point are not graded. South of the lot, which is used as a ball ground, there is a high rocky hill. Upon this hill, spectators sit and watch the ball game in progress.

The railway line crosses Fifth avenue in a cut approximately thirty-five feet deep and forty-five feet from one edge of the cut at the top to the other. The cut had been blasted out of basaltic rock, and its sides were almost perpendicular. The trolley wire is twenty-three feet above the track at the bottom of the cut.

Boys of the neighborhood were accustomed to play in this vicinity, and at times sat upon the edge of the cut and watched the cars pass through below. On April 11, 1911, William A. Kempf, then a boy of six or seven years of age, together with other boys of about the same age or a little older, were playing near the intersection of the two streets named. In the vicinity of the transformer station, they had picked up a number of short pieces of wire. Apparently not knowing exactly what they expected to do with the wire, they tied the various pieces together. A stone was then tied to one end of the wire. When the boys were near the edge of the cut and in Fifth avenue, one of the boys suggested that they play "telephone." One of the boys, Timothy Golithon by name, attempted to cast the rock with the wire tied thereto across to the opposite bank of the cut. This was then to be used as an imaginary telephone line. The Kempf boy, who was injured, at the time the stone was thrown, had hold of the other end of the wire. The cast of the stone was not suf-

ficiently strong to carry it to the opposite bank. It fell into the cut, bringing the wire to which it was tied across the trolley wire, and the Kempf boy thereby received the electric current and sustained a severe injury. The trolley wire at this point carried an electric current of 6,600 volts.

The plaintiff claims that the defendant was negligent in failing to have the trolley wire covered or protected at this point in a manner that would have made it impossible for the wire which was thrown by Golithon to have come in contact with the trolley. There was no evidence that, prior to this time, the boys playing in the vicinity had attempted to enter into any game which would involve the crossing of the cut in any manner. Upon the trial, at the conclusion of the plaintiff's evidence, the defendant challenged the sufficiency thereof and moved for a dismissal of the action. This motion was overruled, and was repeated and likewise overruled at the conclusion of all the evidence.

The question which is decisive of this case is whether the defendant was negligent in failing to guard or cover the trolley wire in some manner. The plaintiff claims that it was negligence on the part of the defendant to maintain a trolley wire carrying 6,600 volts of electricity "within easy reach of the children that play on the bluff above the cut" through which this wire was strung. The degree of care required of one handling a dangerous agency, such as an electric current, varies in proportion to the attendant dangers. In other words, a person handling an agency which is attended with but slight danger must exercise a moderate degree of care, while, if the agency is attended with great danger, the care must be of the highest degree. *Card v. Wenatchee Valley Gas & Elec. Co.*, 77 Wash. 564, 137 Pac. 1047. A trolley wire charged with 6,600 volts of electric current would be an agency which is attended with great danger. In order to charge the defendant with liability, however, it is necessary that the injury which results from such dangerous agency be one which a person of ordinary prudence, in the light of the surrounding

circumstances, would reasonably and naturally anticipate. *Johnston v. New Omaha Thomson-Houston Elec. Light Co.*, 78 Neb. 24, 110 N. W. 711, 17 L. R. A. (N. S.) 435; *Brush Elec. Light & Power Co. v. Lefevre*, 93 Tex. 604, 57 S. W. 640, 77 Am. St. 828, 49 L. R. A. 771.

The rules of law just stated seem to be recognized by both parties. The question, then, is reduced to this: Was the injury which the Kempf boy sustained one which the defendant should reasonably and naturally have anticipated as one likely to occur? After stating the facts in this case, it would seem that little need be said. It is very clear that a person of ordinary prudence, in the light of the surrounding facts and circumstances, would not reasonably and naturally have anticipated that a boy upon the edge of the cut would be injured by the trolley wire which was approximately 23 feet distant on a horizontal line from the edge of the cut, and 12 feet below.

The plaintiff claims that the case of *Card v. Wenatchee Valley Gas & Elec. Co.*, *supra*, sustains his right to have the question submitted to a jury. In that case, the defendant maintained along a highway a high-power electric transmission line. This line was supported by poles and was suspended from the ends of cross-arms which projected over the line of the highway. While one James W. Card was working upon his land, he caused to be elevated to an upright position a wrought iron pipe about 23 feet long and 2½ inches in diameter. This pipe came in contact with the transmission line, and resulted in Card's death. The transmission line at this point was 17 feet from the ground and, as already stated, extended over and beyond the line of the highway. It was held that it was a question for the jury whether the defendant was "negligent in maintaining this high-power electric transmission line, suspended within 17 feet of the ground over the land of the deceased." The deceased came to his death while engaged in the usual and ordinary work upon his farm. He was in no sense a trespasser. The transmission line extended

over and was above his land.  This defendant had no right to place its wire beyond the line of the highway.

In the present case, the trolley wire was where the defendant had a right to maintain it.  An interference with it was an invasion of the right of the defendant.  As already stated, there is no evidence that, prior to the time of the injury for which this suit was brought, the boys, in assembling in the vicinity to play, had in any manner entered upon any games which involved crossing or communicating across the cut. Had it been shown that it was customary for the boys of the neighborhood to indulge in games which involved either real or imaginary communication across the cut, and this fact was actually or constructively known to the defendant, a different question would be presented, upon which no opinion is now expressed.  If the defendant were liable under the facts in this case, it would be equally liable if a boy upon the street should tie a stone to a wire and cast it over a trolley wire and be injured by the resulting shock.  To hold the defendant liable for the injury which the boy upon the edge of the cut sustained, would make the liability of the defendant that of an insurer.  This the law does not impose.  In order to sustain the action, negligence must be shown.

The judgment will be reversed, and the cause remanded with direction to dismiss.

CROW, C. J., GOSE, CHADWICK, and ELLIS, JJ., concur.