[No. 23500. Department Two. March 14, 1932.]

JOHN L. HAYDON, *by D. N. Haydon, his Guardian ad litem, Respondent,* v. BAY CITY FUEL COMPANY *et al., Appellants.*[1]

*Pearson & Potts,* for appellants.
*Paul O. Manley* and *W. H. Abel,* for respondent.

MILLARD, J.—While operated by Clarence G. Johnson, a wood truck owned by the Bay City Fuel Company struck John L. Haydon, who, by his guardian ad litem, brought this action to recover for personal injuries thereby sustained. The acts of negligence alleged were operation of the truck with defective brakes, in failing to keep a proper lookout for foot traffic, in driving the truck at a dangerous and unlawful rate of speed, in failing to give any warning of the approach of the truck, and in driving the truck in an unskillful manner. The trial of the cause to a jury resulted in verdict in favor of the plaintiff against defendants

[1]Reported in 9 P. (2d) 98.

operator and owner. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendants appealed.

Invoking the application of the rule that, in order to recover against the appellants, it was incumbent upon the respondent to show by substantial evidence that appellant driver was negligent (*Dunsmoor v. North Coast Transportation Co.*, 154 Wash. 229, 281 Pac. 995), counsel for appellants contend that the trial court erred in not granting the motion for judgment notwithstanding the verdict.

The trial court is vested with the authority, and upon it is imposed the duty, of granting a motion for judgment notwithstanding the verdict when the evidence and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different finding. *Hanson v. Washington Water Power Co.*, 165 Wash. 497, 5 P. (2d) 1025.

Proof that there was an accident is not proof of negligence. The trial court erred in not granting the motion. There was no evidence to go to the jury showing that the appellants were guilty of any negligent act, as clearly appears from a reading of the facts, which are summarized as follows:

At the time of the accident, which occurred in Aberdeen about 9:45 a. m., March 3, 1931, on Sixth street, near Division street, the respondent lacked two months of being five years old. The day was bright. The only eye-witness, other than the respondent, who did not testify, to the accident was the driver of the offending truck.

Sixth street runs east and west. Division street, the course of which is north and south, ends at its southern terminus with Sixth street. Division street thus ends because to the south of Sixth street is a

ravine. Sixth street, immediately west of Division street, is planked and consists of a bridge three hundred and forty-two and one-half feet in length across a gully or ravine. A portion of the north side of the bridge is set apart for pedestrian traffic. From the south side of the pedestrian walk on the north side of the bridge to the bull rail on the extreme south edge of the bridge, the width is sixteen and one-half feet. This portion of the bridge is solely for vehicular traffic. There is no provision for pedestrian traffic on the south side of the bridge.

From the east end of the bull rail on the south side of the bridge to Division street is twenty-seven and one-half feet. Nineteen and one-half feet south of the bull rail, if extended from its east end to Division street, is a grocery store. This store has a frontage of twenty-seven and one-half feet, the distance from the east end of the bull rail to where Sixth street intersects Division street, which, it will be remembered, does not extend south of Sixth street because of a ravine. A United States mail box about four and one-half feet high and about two and one-half feet square stood near the east end of the bull rail in the recess south of Sixth street. Any one returning from the grocery store to the point where the respondent resided would have to cross Sixth street to the north side and proceed west on the sidewalk on the north side of the bridge.

Pursuant to his parents' instructions, the respondent called at the grocery store on the day in question. Appellant Johnson was proceeding in a two-ton wood truck east across the bridge. Along the southerly (the driver's right-hand side) edge of the bridge was water left by the evening dew. The speed of the truck, the driver testified, was fifteen miles an hour. In his report to the police department following the accident,

he stated the speed was eighteen miles an hour. There was testimony that, some weeks subsequent to the accident, Johnson admitted he was traveling at not more than twenty-five miles an hour.

Johnson, the only eye-witness to the accident, testified that, as he arrived at the end of the bridge, the east end of the bull rail, the respondent ran out from behind (east of) the mail box north straight across Sixth street in front of his truck; that the boy was less than ten feet in front of the truck. Johnson swerved the truck to the left and applied the brakes as soon as he saw the boy, who was struck on the side of the head by the truck's radiator and dragged about twelve or fifteen feet. The boy was picked up under the middle of the truck, but none of the truck wheels passed over his body. Johnson reported to the police:

"I was approaching end of bridge on west Sixth street, and when about ten feet from end of bridge the boy ran out of the store on the right hand side and darted across the street with his head down. I saw him when about six feet away. He was then in the street. I put on the brakes and swerved to the left, but hit the boy and dragged him about twelve or fifteen feet."

The truck skidded and stopped with its front end projecting to the northeast into the intersection of Division street.

The only evidence of illegal rate of speed of the truck was that it skidded about forty feet. As we said in *Herrett v. Puget Sound Traction, L. & P. Co.,* 103 Wash. 101, 173 Pac. 1024:

"We think the only evidence in the case from which the jury might have found that the street car exceeded the lawful rate of twenty miles per hour was the evidence that it traveled from forty-five to seventy feet after the impact before being brought to a stop. In the light of the many elements besides that of the speed at which it was traveling, which might enter into

and affect the stopping of the street car, it may reasonably be held that, from such evidence, a finding by the jury would be a mere speculation or guess.''

The respondent was struck at least ten or twelve feet from the intersection (probably a greater distance) of Division street and Sixth street. As the accident was not within an intersection, there is no showing of a violation by Johnson of the city ordinance prescribing the rate of speed at which vehicles may travel in Aberdeen. The testimony as to the speed of the truck varied from twelve to eighteen miles. One witness testified that Johnson admitted to him he was not traveling more than twenty-five miles an hour at the time of the accident. Even so, that rate of speed was not illegal in Aberdeen if not within an intersection. The accident occurred entirely outside of the intersection.

The right rear wheels of the truck, which was eighteen feet long, skidded because of the moisture on the south side of the bridge, when Johnson applied the brakes. The truck skidded approximately forty feet. The testimony of Johnson is not controverted that, when at a point near the end of the bridge, the east end of the bull rail, the boy darted out from behind the large mail box into the path of the truck. The boy could not have been seen while he was behind that mail box. The truck was then not less than twenty-seven and one-half feet west of Division street. The boy was six to ten feet distant from the truck, which was traveling at twelve to eighteen miles an hour, or not more than twenty-five miles an hour, if we accept the testimony that Johnson so admitted shortly following the accident. Only fractions of seconds were given to the driver to swerve the truck and apply the brakes to avert the accident. He did all that was possible.

The truck commenced to skid twenty-seven and one-half feet west of Division street. When the truck stopped, not more than one-half, or nine feet, of the truck projected into Division street. When the front wheels of the truck were near the east end of the bull rail, the rear wheels, which started the skidding, were a sufficient distance to the rear to account for the additional distance in skidding to make the total approximately forty feet. From this, it is evident that the accident did not occur within the intersection.

There is no showing that Johnson did not keep a proper lookout. When a small boy is behind a mail box the size of the one from behind which the respondent darted, it would be impossible to see him until parallel with the box or until the boy left the place of concealment.

There was no testimony that the sounding of a horn would have averted the accident. The respondent was not seen until it was too late to do other than the driver did—turn the truck and stop it. When the driver first saw the boy, the latter had his head down and was running across the street directly in front of the truck. The driver then had only a fraction of a second in which to endeavor to avoid hitting the boy. The blowing of a horn, clearly, would have subserved no useful purpose. There was no one in sight as the driver came across the bridge. There was nothing to apprise him of the necessity of sounding his horn until, as said before, the boy was almost under the truck. Then all of the driver's energies were employed to save the boy.

"We will consider the appellant's assignments of error in the order in which they have been argued in both parties' briefs. . . .

"(2) The blowing of the horn.

"Such examination of the testimony as we have been able to make does not disclose anything that would warrant the submission to the jury of this phase of

negligence. The driver's positive statement that he blew his horn does not seem to have been sufficiently contradicted to have made the question submissible, and furthermore there is nothing in the situation to show that had the horn been blown it would have been of any assistance in averting the collision. We think it was error, therefore, for the court to submit the question of the appellant's negligence in this regard to the jury's consideration." *Walker v. Butterworth,* 122 Wash. 412, 210 Pac. 813.

All that the evidence established in the case at bar was that there was an unavoidable accident.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

TOLMAN, C. J., BEALS, MAIN, and HOLCOMB, JJ., concur.