[No. 11341. Department Two. January 24, 1914.]

IDA B. CARD et al., Respondents, v. WENATCHEE VALLEY GAS & ELECTRIC COMPANY, Appellant.[1]

ELECTRICITY — HIGH POWER TRANSMISSION LINE — NEGLIGENCE — QUESTION FOR JURY. The negligence of an electric light company in the maintenance of high power transmission lines is for the jury, where it appears that its uninsulated wires carrying 16,000 volts along a public highway was only 17 feet high, and extended two feet over the line of the highway onto the land of the deceased, who was killed while working under the line with a piece of iron pipe, which came in contact with the wire, and experts testified that such a wire should properly have been carried 45 feet above the ground.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. In such a case, the contributory negligence of the deceased was a question for the jury, where it appears that deceased was working upon an

[1]Reported in 137 Pac. 1047.

irrigation flume on his land, in which long iron pipes were used, that he was endeavoring to clear a piece of pipe of obstruction by holding it on end, when it accidentally came in contact with the wire, and the deceased did not know of the extremely dangerous character of the current carried by the wire.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered February 14, 1913, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Affirmed.

*Reeves, Crollard & Reeves,* for appellant.

*Frank A. Steele* and *Fred Kemp,* for respondents.

PARKER, J.—This action was prosecuted in the superior court for Chelan county, by the widow and minor child of James W. Card, to recover damages which they allege resulted to them from his death, caused by the defendant's negligent manner of maintaining its electric power transmission line. A trial before the court and a jury resulted in verdict and judgment in favor of the plaintiffs, from which the defendant has appealed. The contentions of counsel for appellant all go to their claim that the trial court erred in refusing to take the case from the jury and decide it in appellant's favor, as a matter of law; it being claimed that the evidence was insufficient to support any finding of negligence on the part of the appellant and, also, that the evidence conclusively showed that deceased met his death as the result of his own negligence. The facts are not seriously in dispute, the real contentions having to do with the question of what conclusions reasonable minds might draw from the facts as to the negligence of appellant and deceased. .

James W. Card, at the time of his decease, owned and occupied, with his family, a small farm fronting upon a main traveled road, in Chelan county. Appellant maintained along this road a high power electric transmission line, consisting of poles supporting wires. The lower wire of this line was uninsulated, carried 16,500 volts, and was suspended from

the ends of cross-arms which projected over the line of the
highway some two feet, so that it was directly over the land
of deceased, and within seventeen feet of the ground. The
land of deceased, like all other land in that neighborhood,
was farmed by irrigation. It was customary for the farmers
to carry water for irrigation on and across their land, to a
considerable extent, in iron pipes as well as in open ditches
and wooden flumes. The pipes varied in length from ten to
twenty feet. Some of the iron pipes were made of light gal-
vanized iron, and some of the heavier wrought iron.

On April 23, 1912, deceased was working upon his land
near the highway, directly under appellant's transmission
line, on one of his lateral flumes. He had a length of wrought
iron pipe about twenty feet long and two and one-half inches
in diameter, from the inside of which he was trying to re-
move a piece of wood. In his efforts to do so, he raised the
pipe on end, and proceeded to raise and let it down upon
the boards of the flume, with a view to jarring the wood out
of it. The pipe then came in contact with the wire of ap-
pellant's transmission line, which was directly over his head.
The pipe coming in contact with the wire, when raised off the
ground while held by deceased in his hands, caused a ground
connection of the electric current through his body, and he
was thereby instantly killed.

Deceased had lived on this land for about three years, dur-
ing which time appellant's transmission line had been there
over his land. He knew of its presence, but there is no evi-
dence that he knew of the extreme high power of the current,
nor of its deadly effect to one coming in contact with it.
There was evidence tending to show that he knew that a
neighbor's boy had received a shock from throwing a long
piece of sea kelp over the wire, while playing with the kelp
as he would with a long whip, but apparently the shock then
received by the boy was not serious. There was introduced
testimony of experienced electrical engineers touching the
proper height at which wires carrying powerful electric cur-

rent should be suspended above the ground. This evidence was such as to fully warrant the jury in believing that, for a proper degree of safety, a transmission wire carrying 10,000 volts or more should be, in no event, less than 25 feet from the ground, and that the usual construction regarded proper by engineers would suspend a wire carrying 10,000 or more volts about 45 feet above the ground. Appellant had a franchise for the maintenance of its transmission line along this road, but had no right to suspend any of its wires over the land of deceased. It is conceded that the 16,500 volts carried by the wire which was suspended over respondents' land was highly dangerous, in fact, deadly in its effect, should any one come in contact with it either directly or through any medium which would cause the current to pass through the body of such person.

It is first argued that the evidence failed to show negligence on the part of appellant in the maintenance of its transmission line in the manner and location shown. It seems to us the degree of care required by the law from appellant in the handling of this highly dangerous agency must be considered in connection with the question of its negligence. The degree of care required of one in the handling of a more or less dangerous agency must be commensurate with the degree of danger involved; that is, the degree of care which must be exercised by one in handling an agency which is attended with but slight danger would require but a moderate degree of care; while, if the agency is attended with great danger, and especially if it is such as to destroy human life, the care must be of the highest degree. This view is well expressed by Mr. Croswell in his work, The Law Relating to Electricity, at § 234, as follows:

"The amount of care necessary varies with the danger which is incurred by negligence, for a prudent and reasonable man increases his care with the increase of danger. If but little danger is incurred, as, for instance, when the wires carry only a harmless electric current, such, for instance, as

the telegraph or telephone current, only ordinary care may be required. While if the wires carry a strong and dangerous current of electricity, so that negligence will be likely to result in serious accidents, and perhaps death, or if a harmless wire is in dangerous proximity to a high tension wire, a very high degree of care, indeed, the highest that human prudence is equal to, is necessary. This is particularly true of electric light and electric railway wires, which carry a high tension current often of great danger. The rule is thus stated in a case in Massachusetts. 'The vigilance and attention required must conform to the nature of the emergency and the danger to which others may be exposed, and is always to be judged of according to the subject-matter, the danger and force of the material under the defendant's charge.' "

This is in harmony with the views generally expressed in the decisions of the courts. *McLaughlin v. Louisville Elec. Light Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; *Metropolitan S. R. Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807; *Harter v. Colfax Elec. Light & Power Co.*, 124 Iowa 500, 100 N. W. 508; *Gilbert v. Duluth General Elec. Co.*, 93 Minn. 99, 100 N. W. 653, 106 Am. St. 430; *Phelan v. Louisville Elec. Light Co.*, 122 Ky. 476, 91 S. W. 703; see note to this decision in 6 L. R. A. (N. S.) 459.

Applying this rule of law to the facts we have noticed, we think there is little remaining to be said in support of the correctness of the action of the trial court in leaving the question of appellant's negligence to the jury. In the light of all the circumstances, we think it cannot be said that reasonable minds might not arrive at the conclusion that appellant was negligent in maintaining this high powered electric transmission line suspended within seventeen feet of the ground over the land of deceased.

Contention is made that the coming in contact with this wire by deceased in the manner shown was so extraordinary as not to require anticipation thereof by appellant. It may be that the particular manner of coming in contact with the wire would hardly be anticipated by appellant or its agents.

That, however, it seems to us, is not the real test. As was said by Justice Siebecker, speaking for the supreme court of Wisconsin in *Wilbert v. Sheboygan Light, Power & R. Co.*, 129 Wis. 1, 106 N. W. 1058, 116 Am. St. 931:

"To say that a condition is reasonably to be apprehended does not imply that the exact condition proven as to the erection of this tree wire was to have been expressly contemplated, but it implies that a dangerous condition, in the nature of this one, was likely to arise in connection with the conduct of appellant's business."

It seems to us it is not so much a question of what particular incident might occur to bring a person in contact with the wire; but whether a person, following his usual avocation where he has a right to be, might in any manner be brought in contact with the wire. It seems to us, in view of the deadly character of this powerful current, the high degree of care required of appellant in its maintenance, and the fact that it was suspended over the land of deceased at the height of seventeen feet, the jury might well conclude that appellant was bound to anticipate occurrences of the nature here involved. We are of the opinion that, under all the circumstances, the question of appellant's negligence was one for the jury, and could not be determined as a matter of law.

Our attention is called to the decisions of this court in *Graves v. Washington Water Power Co.*, 44 Wash. 675, 87 Pac. 956, 11 L. R. A. (N. S.) 452, and *Mayhew v. Yakima Power Co.*, 72 Wash. 431, 130 Pac. 485, where the court held with the defendants on the question of their negligence as a matter of law. Those were extreme cases. In the *Graves* case, the plaintiff was not where he had a right to be; and besides, he was required to use extraordinary efforts to come in contact with the wire of the defendant. He was climbing up near the wire to secure a bird's nest. In the *Mayhew* case, the wire was suspended forty-five feet above the highway, and it was plain that no usual contemplated use of the highway

could possibly bring a person in contact with the wire. We think those cases are not controlling here.

It is finally argued that the deceased was negligent in allowing the pipe in his hands to come in contact with the wire. This, we think, was also a question for the jury and could not be determined as a matter of law, in view of the facts we have noticed; especially in view of the fact that deceased was where he had a right to be, engaged in his usual avocation, that appellant's wire was suspended over his land without right, and it not being shown that deceased had knowledge of the extremely dangerous character of the current carried on the wire.

The judgment is affirmed.

CROW, C. J., FULLERTON, and MOUNT, JJ., concur.