FLORENCE HYNES, as Administratrix of the Estate of JAMES H. HYNES, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

*Negligence — railroads — real property — trespass — water and watercourses — landowners bound to regulate conduct so as not to injure travelers upon adjacent public way — duty of railroad to bathers in river bordering its right of way — when bather does not become trespasser — administrator entitled to recover where bather is killed by electric wires falling from defendant's property.*

1. Landowners are not bound to regulate their conduct in contemplation of the presence of trespassers intruding upon private structures but *are* bound to regulate their conduct in contemplation of the presence of travelers upon the adjacent public ways.

2. A railroad whose right of way borders a navigable river is under a duty to use reasonable care that bathers swimming or standing in the water should not be electrocuted by wires falling from its property.

3. Bathers in the river, who in the enjoyment of a public highway are entitled to reasonable protection against injury from such railroad's wires, do not cease to be entitled to the same protection while they are diving from encroaching objects or engaging in sports common among swimmers. Such acts are not equivalent to an abandonment

of the highway, a departure from its proper uses, a withdrawal from the waters and an entry upon the land.

4. Defendant's right of way bordered the Harlem river. It operated its trains at that point by electricity. High tension wires were strung on poles along the river bank. From one of its bulkheads a plank or springboard projected over the water seven and one-half feet beyond the line of its property. Plaintiff's intestate, swimming from the other side of the river, had climbed on the bulkhead and proceeded to the end of the springboard to dive when he was struck by wires which fell from one of defendant's poles and killed. *Held*, that the use of the springboard by intestate was not an abandonment of his rights as a bather and that there was no moment when he was beyond the pale of defendant's duty of care and vigilance in the storage of destructive forces.

*Hynes* v. *N. Y. C. R. R. Co.*, 190 App. Div. 915, reversed.

(Argued March 17, 1921; decided May 31, 1921.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 12, 1920, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*Sydney A. Syme* for appellant. The doctrine that " the owner of a wharf, pier or like projection, even if it run out beyond the proper exterior line, has a good right against all private intruders or trespassers " applies only where the projection is an integral part of the wharf or pier, and has never been applied, even then, when such projection is an unlawful interference with navigation. (*Wetmore* v. *Atlantic White Lead Co.*, 37 Barb. 70; *Wetmore* v. *Brooklyn Gas Light Co.*, 42 N. Y. 384; *C. L. Navigation Co.* v. *K. Navigation Co.*, 26 Wkly. Dig. 145.) The decedent was not a trespasser, in any sense, upon the defendant's property. (*Wittleder* v. *Citizens' Illuminating Co.*, 47 App. Div. 410; *Wilson* v. *American Bridge Co.*, 75 App. Div. 596; *Greenshow* v. *Lake Shore & M. S. R. Co.*, 140 App. Div. 687; 205 N. Y. 317.) While the decedent was not in the fairway,

in a vessel, or swimming, he was nevertheless in the fairway, when he was in a place which was out over the waters of the ship canal, and beyond the defendant's property line. (*The Oliver*, 22 Fed. Rep. 848; *Butler v. Frontier Tel. Co.*, 186 N. Y. 486; *Weitzman* v. *Barber Asphalt Co.*, 120 App. Div. 891; 190 N. Y. 452.) The Harlem river is a public highway; and the plaintiff's decedent was entitled to bathe therein, subject only to the rights of the public and to the duties owed to the public. (*People* v. *Lambier*, 5 Denio, 2; Angell on Tidewaters [2d ed.], 112; *Leverich* v. *City of Mobile*, 110 Fed. Rep. 170; *S. P. & P. R. R. R. Co.* v. *Schurmier*, 7 Wall. 272.) The owner or occupier of land is bound to exercise reasonable care in its use, and to take reasonable precautions to avoid injuring persons on adjoining premises. (*Weitzman* v. *Barber Asphalt Co.*, 120 App. Div. 891; 190 N. Y. 452; 129 App. Div. 443.)

*John F. Brennan* for respondent. The decedent here was a trespasser and the railroad company owed him no duty other than not to intentionally, wantonly or recklessly injure him. (*Nicholson* v. *Erie R. R. Co.*, 41 N. Y. 525; *Chrystal* v. *Troy R. R. Co.*, 105 N. Y. 164; *Albrecht* v. *Rochester, S. & E. R. R. Co.*, 205 N. Y. 230; *Wetmore* v. *B. G. L. Co.*, 42 N. Y. 384.)

CARDOZO, J. On July 8, 1916, Harvey Hynes, a lad of sixteen, swam with two companions from the Manhattan to the Bronx side of the Harlem river or United States Ship canal, a navigable stream. Along the Bronx side of the river was the right of way of the defendant, the New York Central railroad, which operated its trains at that point by high tension wires, strung on poles and crossarms. Projecting from the defendant's bulkhead above the waters of the river was a plank or springboard from which boys of the neighborhood used to dive. One end of the board had been placed under

a rock on the defendant's land, and nails had been driven at its point of contact with the bulkhead. Measured from this point of contact the length behind was five feet; the length in front eleven. The bulkhead itself was about three and a half feet back of the pier line as located by the government. From this it follows that for seven and a half feet the springboard was beyond the line of the defendant's property, and above the public waterway. Its height measured from the stream was three feet at the bulkhead, and five feet at its outermost extremity. For more than five years swimmers had used it as a diving board without protest or obstruction.

On this day Hynes and his companions climbed on top of the bulkhead intending to leap into the water. One of them made the plunge in safety. Hynes followed to the front of the springboard, and stood poised for his dive. At that moment a crossarm with electric wires fell from the defendant's pole. The wires struck the diver, flung him from the shattered board, and plunged him to his death below. His mother, suing as administratrix, brings this action for her damages. Thus far the courts have held that Hynes at the end of the springboard above the public waters was a trespasser on the defendant's land. They have thought it immaterial that the board itself was a trespass, an encroachment on the public ways. They have thought it of no significance that Hynes would have met the same fate if he had been below the board and not above it. The board, they have said, was annexed to the defendant's bulkhead. By force of such annexation, it was to be reckoned as a fixture, and thus constructively, if not actually, an extension of the land. The defendant was under a duty to use reasonable care that bathers swimming or standing in the water should not be electrocuted by wires falling from its right of way. But to bathers diving from the springboard, there was no duty, we are told, unless the

1921.]        Opinion, per CARDOZO, J.        [231 N. Y. 229]

injury was the product of mere willfulness or wantonness, no duty of active vigilance to safeguard the impending structure. Without wrong to them, crossarms might be left to rot; wires highly charged with electricity might sweep them from their stand, and bury them in the subjacent waters. In climbing on the board, they became trespassers and outlaws. The conclusion is defended with much subtlety of reasoning, with much insistence upon its inevitableness as a merely logical deduction. A majority of the court are unable to accept it as the conclusion of the law.

We assume, without deciding, that the springboard was a fixture, a permanent improvement of the defendant's right of way. Much might be said in favor of another view. We do not press the inquiry, for we are persuaded that the rights of bathers do not depend upon these nice distinctions. Liability would not be doubtful, we are told, had the boy been diving from a pole, if the pole had been vertical. The diver in such a situation would have been separated from the defendant's freehold. Liability, it is said, has been escaped because the pole was horizontal. The plank when projected lengthwise was an extension of the soil. We are to concentrate our gaze on the private ownership of the board. We are to ignore the public ownership of the circumambient spaces of water and of air. Jumping from a boat or a barrel, the boy would have been a bather in the river. Jumping from the end of a springboard, he was no longer, it is said, a bather, but a trespasser on a right of way.

Rights and duties in systems of living law are not built upon such quicksands.

Bathers in the Harlem river on the day of this disaster were in the enjoyment of a public highway, entitled to reasonable protection against destruction by the defendant's wires. They did not cease to be bathers entitled to the same protection while they were diving from

encroaching objects or engaging in the sports that are common among swimmers. Such acts were not equivalent to an abandonment of the highway, a departure from its proper uses, a withdrawal from the waters, and an entry upon land. A plane of private right had been interposed between the river and the air, but public ownership was unchanged in the space below it and above. The defendant does not deny that it would have owed a duty to this boy if he had been leaning against the springboard with his feet upon the ground. He is said to have forfeited protection as he put his feet upon the plank. Presumably the same result would follow if the plank had been a few inches' above the surface of the water instead of a few feet. Duties are thus supposed to arise and to be extinguished in alternate zones or strata. Two boys walking in the country or swimming in a river stop to rest for a moment along the side of the road or the margin of the stream. One of them throws himself beneath the overhanging branches of a tree. The other perches himself on a bough a foot or so above the ground (*Hoffman* v. *Armstrong*, 48 N. Y. 201). Both are killed by falling wires. The defendant would have us say that there is a remedy for the representatives of one, and none for the representatives of the other. We may be permitted to distrust the logic that leads to such conclusions.

The truth is that every act of Hynes from his first plunge into the river until the moment of his death, was in the enjoyment of the public waters, and under cover of the protection which his presence in those waters gave him. The use of the springboard was not an abandonment of his rights as bather. It was a mere by-play, an incident, subordinate and ancillary to the execution of his primary purpose, the enjoyment of the highway. The by-play, the incident, was not the *cause* of the disaster. Hynes would have gone to his death if he had been below the springboard or beside it (*Laidlaw*

1921.]        Opinion, per Cardozo, J.        [231 N. Y. 229]

v. *Sage*, 158 N. Y. 73, 97). The wires were not stayed by the presence of the plank. They followed the boy in his fall, and overwhelmed him in the waters. The defendant assumes that the identification of ownership of a fixture with ownership of land is complete in every incident. But there are important elements of difference. Title to the fixture, unlike title to the land, does not carry with it rights of ownership *usque ad coelum*. There will hardly be denial that a cause of action would have arisen if the wires had fallen on an aeroplane proceeding above the river, though the location of the impact could be identified as the space above the springboard. The most that the defendant can fairly ask is exemption from liability where the use of the fixture is itself the efficient peril. That would be the situation, for example, if the weight of the boy upon the board had caused it to break and thereby throw him into the river. There is no such causal connection here between his position and his injuries. We think there was no moment when he was beyond the pale of the defendant's duty — the duty of care and vigilance in the storage of destructive forces.

This case is a striking instance of the dangers of " a jurisprudence of conceptions " (Pound, Mechanical Jurisprudence, 8 Columbia Law Review, 605, 608, 610), the extension of a maxim or a definition with relentless disregard of consequences to a " a dryly logical extreme." The approximate and relative become the definite and absolute. Landowners are not bound to regulate their conduct in contemplation of the presence of trespassers intruding upon private structures. Landowners *are* bound to regulate their conduct in contemplation of the presence of travelers upon the adjacent public ways. There are times when there is little trouble in marking off the field of exemption and immunity from that of liability and duty. Here structures and ways are so united and commingled, superimposed upon each other, that the

[231 N. Y. 229]    Opinion, per CARDOZO, J.    [May,

fields are brought together. In such circumstances, there is little help in pursuing general maxims to ultimate conclusions. They have been framed *alio intuitu*. They must be reformulated and readapted to meet exceptional conditions. Rules appropriate to spheres which are conceived of as separate and distinct cannot, both, be enforced when the spheres become concentric. There must then be readjustment or collision. In one sense, and that a highly technical and artificial one, the diver at the end of the springboard is an intruder on the adjoining lands. In another sense, and one that realists will accept more readily, he is still on public waters in the exercise of public rights. The law must say whether it will subject him to the rule of the one field or of the other, of this sphere or of that. We think that considerations of analogy, of convenience, of policy, and of justice, exclude him from the field of the defendant's immunity and exemption, and place him in the field of liability and duty (*Beck* v. *Carter*, 68 N. Y. 283; *Jewhurst* v. *City of Syracuse*, 108 N. Y. 303; *McCloskey* v. *Buckley*, 223 N. Y. 187, 192).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HOGAN, POUND and CRANE, JJ., concur; HISCOCK, Ch. J., CHASE and McLAUGHLIN, JJ., dissent.

Judgments reversed, etc.