JOSEPH CONNOLLEY, AN INFANT BY AND THROUGH HIS MOTHER AND NEXT FRIEND, GENEVIEVE CONNOLLEY, APPELLANT, V. OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLEE.

177 N. W. 2d 492

Filed May 8, 1970. No. 37257.

Seymour L. Smith and Eisenstatt, Morrison, Higgins, Miller, Kinnamon & Morrison, for appellant.

Fraser, Stryker, Marshall & Veach, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ., and KOKJER, District Judge.

KOKJER, District Judge.

The plaintiff was injured by electricity when a metal flagpole he was helping to lower came in contact with a wire of defendant's transmission line. He claims that defendant is liable for his damages because the wire, at the point of contact, hung over the property of plaintiff's family 54/100ths of a foot. No negligence on the part of the defendant was proved. The claim for recovery is based on the asserted trespass of defendant upon the property. When the evidence was completed, defendant moved for a directed verdict or for a dismissal of the case. The motion was sustained and the case was dismissed. Plaintiff appealed.

The evidence, construed most favorably to plaintiff, as it must be in this situation, sustains the trespass. The power line had been constructed along the east line of the property in the year 1930. Plaintiff's father bought the lot in the year 1959. He started to construct a house on it in 1962. Some work was done the same year on the line but the location of the wires had not been changed between the time the house was constructed and the date of the accident on July 3, 1965. Plaintiff's father testified that he believed they had moved into the house in March 1964.

Shortly before July 3, 1965, plaintiff's father had poured a concrete base rising 6 to 8 inches above the ground, and included therein a hole in which to insert a flagpole. The base was 2.61 feet west of the west wire of the transmission line and 3.15 feet west of the east property line. The wire at that point on April 15, 1967, was 30.24 feet above the ground. The plaintiff's father had assembled a flagpole by taking a section of pipe, inserting a smaller pipe into it, bolting them together, then inserting a still smaller pipe into that one, and bolting them together. The length of the finished flagpole was 33 feet, 5 inches.

On July 3, 1965, plaintiff, plaintiff's father, and a neighbor placed the butt end of the flagpole against the concrete base. Taking hold of the outer end, they walked toward the base, lifting the outer end of the pole higher as they walked, until it was vertical, and then slipped the butt end into the hole in the base. The neighbor went home and plaintiff's uncle then arrived. It was discovered that the pulley rope to which the flag was to be attached was too high to be reached, and they decided to take the pole down and cut off some of the bottom of it. The three of them took hold of the pole and, after lifting it up out of the hole, set it on top of the concrete base.

On direct examination plaintiff's father testified as follows: "Q. Go ahead and tell the Jury then what

happened. A. I don't know what happened after that hit us or the length of time, I wouldn't know this, but evidently if it had struck that wire up there, which that evidently is what it did, then we fell away to the ground unconscious."

On cross-examination plaintiff's father testified as follows: "Q. And as you stood there, was there any particular length of time went by before this accident occurred? A. It was a very short while, very, very short while after we had it out of the socket that it made contact with, I would imagine, the electric wire. Q. Well, there is no doubt in your mind but what the electrict wire was contacted, is there? A. No doubt, no sir."

An electric shock injured plaintiff severely and also injured his father and uncle to a degree not disclosed by the record.

Both plaintiff and his father admitted they knew that it was dangerous to contact an electric wire. They knew the wires were there but as they proceeded to erect the flagpole they paid no attention to them and did not discuss the possibility of danger.

An engineer testified that on April 15, 1967, somewhat over a year and 9 months after the incident he, with the assistance of two boys, by use of a transit, a method known as triangulation, and trigonometry, determined that on that date the westernmost wire of the transmission line hung 54/100ths of a foot, a little more than 6 inches, inside the property line.

Later, plaintiff, a minor, by his mother and next friend, filed this suit against defendant to recover for his injuries.

Plaintiff's attorneys had evidently decided that the facts would not sustain a suit against the defendant for any negligence on its part; and that if plaintiff were to recover at all, it would have to be on the theory that defendant had trespassed upon the property of plaintiff's family. They asked the court to require the de-

fendant to pay for plaintiff's damages on the following theories:

(1)   A trespasser on land is subject to liability for bodily harm caused to the possessor thereof, or to the members of his household, by the trespass, irrespective of whether the trespasser's conduct is such as would subject him to liability were he not a trespasser.

(2)   Trespass and negligence are distinguishable. To recover against a trespasser, it is not necessary to prove negligence.

(3)   Neither contributory negligence nor assumption of risk constitutes a defense in an action for trespass.

(4)   Proximate cause is ordinarily a question for the jury.   It is that cause which is an efficient agent in producing a given result.   Where several causes concur to produce a certain result, either may be termed a proximate cause if it is an efficient cause of the result in question.

The district court sustained one other of plaintiff's theories and held there was a reasonable inference of trespass, but held that plaintiff's case based on trespass to real estate, anciently referred to as trespass quare clausum fregit, had to rest on proof that the injury complained of was the immediate and direct result of the trespass, and this proof was lacking. The district court also held that, even construing the action as one for negligence, anciently referred to as trespass on the case, it would be defeated by negligence of plaintiff and his father which were the proximate cause of the injuries.

Since nearly every violation of one's rights was anciently considered a trespass, there are literally hundreds of cases dealing with trespass vi et armis, trespass de bonis asportatis, trespass quare clausum fregit, trespass on the case, and so forth.   In many of the reported cases the distinctions are blurred, and a negligence case may be treated loosely as one for trespass.   The opinions frequently commingled the theories.

"Generally speaking, trespass on the case lies for an

injury resulting from a wrongful act other than physical force, or for an injury resulting from nonfeasance or negligence, or for an injury which is a consequential, as distinguished from a direct or immediate, result of the wrongful act." 52 Am. Jur., Trespass on the Case, § 5, p. 901.

Such would be an action for injuries contributed to by an electric company's negligence in permitting wires to sag so the wind might blow them and cause a dangerous condition; or to construct their lines too low or too close to a place where contact with any person or thing could be reasonably expected.

"An injury is considered as immediate and therefore remediable by an action of trespass, as distinguished from trespass on the case, only when it is directly occasioned by, and is not merely a consequence resulting from, the act complained of." 52 Am. Jur., Trespass on the Case, § 5, p. 901.

Such would be an act directly damaging a person's house or garden or trees during line construction, and perhaps initially energizing a new line into a home without providing an adequate transformer, so that by that act excessively high voltages would burn out appliances, cause a fire, or personally injure the home owner's family.

The difficulty in applying the correct rules in this area of the law is summarized in Corpus Juris as follows:

"Case and trespass are clearly distinguishable, although the distinction is somewhat subtle and sometimes difficult of application. As ordinarily stated, the distinction is that where the injury resulting from a particular act is direct and immediate, trespass is the proper remedy, but that where it is not direct, but merely consequential, the proper remedy is case. * * * but it has been suggested that the true gist of the distinction intended lies not so much in the proximate or remote character of the damage as in the primary or secondary nature of the trespass." 1 C. J., Actions, § 117, p. 996.

"While theoretically the distinction between the actions of case and trespass is clear and well settled, yet it is one which is often difficult to apply to the facts and circumstances of particular cases." 1 C. J., Actions, § 126, p. 999.

In note 75 to the above section appears the following: "The probability of injury resulting from the act done, under the circumstances of the particular case, is an element to be considered in determining the directness of the injury as affecting the proper form of action. Cole v. Fisher, 11 Mass. 137. See also Loubz v. Hafner, 12 N. C. 185."

There are cases where the distinction is not precise which would appear to lend support to the theories advanced by plaintiff's attorneys. One of these upon which they rely is Kopka v. Bell Telephone Co. of Pennsylvania, 171 Pa. 444, 91 A. 2d 232, in which the defendant unlawfully dug a hole on plaintiff's property. Plaintiff was advised of this fact by a neighbor, and, while searching for it, fell into the hole and sustained injury. There the court said: "The liability of defendant Company for the trespass in the digging of the hole on plaintiff's land, without his knowledge or consent being thus established, does liability extend to the personal injuries sustained by him as the result of his falling into the hole? The authorities are clear to the effect that where the complaint is for trespass on land the trespasser becomes liable not only for personal injuries resulting directly and proximately from the trespass but also for those which are indirect or consequential."

It will be noted that there was no immediate or direct injury to plaintiff's person from the digging of the hole, although there was to his land, so the recovery for injury to his body could not have been properly allowed for trespass. However, it could have been and apparently was allowed on the theory of a consequential injury for defendant's negligence in leaving an unguarded hole at a place where it could be reasonably

anticipated that some person might fall into it. This would be an action for trespass on the case to which contributory negligence, if any, would be a defense. This case and others like it merely illuminate the manner in which the distinction between trespass and trespass on the case is confused.

Plaintiff herein proposes a rule which would make a power district or other proprietor of an electric transmission line an insurer for all time of a property owner and his family so long as the transmission line hangs over the property to any degree, even though it is constructed and maintained without negligence. Such a rule would require payment of damages regardless of any reckless, negligent, or even willful act of the property owner and his family. There is no sound basis in reason, statute, or applicable case law for such a rule.

Plaintiff claims that the district court erred in not submitting the question of proximate cause to the jury. It is true that ordinarily this is a jury question. Could it be in this case where: (1) Defendant cannot be held liable, in any event, on the theory of trespass for an act which was not a direct, immediate, or primary result of the injury; and (2) there is no proof whatever of any negligence on the part of the defendant? We think not.

The district court held correctly, we think, that defendant could not be held liable in trespass for injuries which were indirect and consequential. The court then stated that even construing the action as one based on negligence, there was gross negligence on the part of plaintiff's father. The rule in Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117, and Bruno v. Gunnison Contractors, Inc., 176 Neb. 462, 126 N. W. 2d 477, where the negligence charged furnishes only a condition by which the injury is made possible, and a subsequent independent act of a third party causes the injury, the two acts are not concurrent, and the existence of the condition is not the proximate cause of the injury, is applicable here. Under the facts of this case, the

district court was correct in not submitting the question of proximate cause to the jury.

The judgment of the district court was correct and it is affirmed.

AFFIRMED.

SPENCER, J., dissenting.

I am not in agreement with the majority opinion herein, and in dissent make the following observations.

The base for the flagpole was constructed on and 3.15 feet from the east lot line of the property. The defendant owned, maintained, and operated an electrical distribution line on North Seventy-eighth Street in Omaha, Nebraska, which runs north and south in the parkway along the east side of the Connolley property but has no connection to that property. The west wire of said line is conceded to be .54 feet into the Connolley property. For the purposes of this case, it must be conceded that the defendant had no right by consent, prescription, easement, or otherwise to maintain the west wire over or upon the Connolley property. The electrical energy carried at the time of the accident was 13,000 volts. It is undisputed that there were no warning signs showing that this line carried a dangerous charge of electricity or that this highly energized wire was protruding over the property. This line did not serve the Connolley property. It was served with electricity by a transmission line behind the house from a line which comes off a pole in the southwest corner of the property.

Other than the participants, the only eyewitness was one Emil John Torres who testified that he lives four lots south of the Connolleys, or approximately 400 feet away, and that he did not know them personally. At the time of the accident he was in his front yard and noticed some people in the Connolley front yard who were holding something straight up in the air, approximately vertical. About the same instant he noticed a yellow flash in the vicinity of the west wire. The flash was directly above what he saw the people holding. The

flash was yellow like an arc, and was plainly visible.

There is only one issue presented in this appeal: Did the trial court err in sustaining defendant's motion for a directed verdict, thereby removing from the jury the question of the proximate cause of the plaintiff's injury? In determining whether the plaintiff's evidence is sufficient to present a question for the jury, it must be considered in the light most favorable to him, every controverted fact must be resolved in his favor, and he must have the benefit of every inference that can be reasonably drawn from the evidence. Reeder v. Rinne, 183 Neb. 734, 164 N. W. 2d 203.

There can be no question the defendant is a trespasser on the property involved herein. A taking of land for public use without authorization is a trespass. Martin v. Norris Public Power Dist., 175 Neb. 815, 124 N. W. 2d 221.

We are concerned here with what is described as a continuing trespass. A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor or his predecessor in legal interest has placed on the land. Restatement 2d, Torts, § 160, p. 284. The actor's failure to remove from land in the possession of another a structure, chattel, or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land. Restatement 2d, Torts, § 161, comment b. p. 289.

In the instant case, the wire overhanging the property of plaintiff's parents is constantly energized and the trespass was active and operative at the moment of plaintiff's injury. The Restatement rule on the extent of a trespasser's liability for harm is as follows: "A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or to his things, or to members of his household or to their things, caused by any act done, activity carried on, or condition created by the

trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser." Restatement 2d, Torts, § 162, p. 291.

This is not a case where we can assume that the Connolleys lost control of the pole and that it fell eastward onto the offending wire. The evidence which we must consider herein is otherwise. The reasonable inference from the testimony of the only disinterested eyewitness is that the electricity arced or jumped from the wire to the pole. This must be considered in connection with the plaintiff's testimony that the pole was straight up and down at the time he was knocked unconscious. When the parties were knocked to the ground, the pole fell. The marks on the pole, shown by exhibit 29, would indicate that the pole could have slid along the wire when it fell, after electricity jumped the gap between the wire and the pole. Defendant's crew foreman on cross-examination admitted that after the initial contact further contact might have been made between the pole and the wire.

Plaintiff's father was erecting the flagpole on his own property. The base he prepared for it was located more than 3 feet from the east lot line. If the defendant's wire had not been over his property but in the parkway adjoining it, we would have an entirely different situation. Then the authorities relied on by the majority opinion would be relevant. We cannot separate the accident herein from defendant's trespass. Even if we assume negligence on the part of plaintiff's father, it still took the trespass to produce the injury.

The plaintiff herein testified that he had no occasion to look up at the wires; that he had never paid any attention to them; and even if he had, he would not have know what they were. This testimony should be considered in connection with the fact that the plaintiff's home was not served with electricity from these wires but from one coming into the home from the rear. Further, he had a right to be where he was at the time of

the accident; he was engaged in assisting his father in a family project wholly upon his parent's property. Defendant's wire was suspended over this property without right.

Plaintiff could not be held contributorily negligent as a matter of law. In fact, the evidence was insufficient to submit the issue to the jury. On the facts herein, it must be assumed that plaintiff had no knowledge of the extremely dangerous character of the wire. Even if plaintiff had specifically observed the wire, there is a serious question as to whether a child of his years and experience would realize the danger. Also, he might have assumed it to be further away than it actually was. It is of interest that defendant's crew foreman, who had considerable experience in such matters, placed the wire as 4 feet from the base of the pole. This statement, made in Henderson v. Kansas Power & Light Co., 184 Kan. 691, 339 P. 2d 702: "A high-voltage power line is one of the most dangerous things known to man. Not only is the current deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless," is certainly appropriate herein.

Defendant was unlawfully maintaining a dangerous energized wire over the property on which plaintiff resided. Plaintiff's injury arose out of this unauthorized invasion of that property. This continuous trespass is at the very least a proximate cause of plaintiff's injury.

This case is not too far different from Kopka v. Bell Telephone Co. of Pennsylvania, 371 Pa. 444, 91 A. 2d 232, cited in the majority opinion. There the defendant unlawfully dug a hole on plaintiff's property. Plaintiff was advised of this fact by a neighbor, and while searching for it fell into the hole and sustained injury. There the court said: "The liability of defendant Company for the trespass involved in the digging of the hole on plaintiff's land without his knowledge or consent being thus established, does such liability extend to the per-

sonal injuries sustained by him as the result of his falling into the hole? The authorities are clear to the effect that where the complaint is for trespass on land the trespasser becomes liable not only for personal injuries resulting directly and proximately from the trespass but also for those which are indirect and consequential. In Restatement, Torts, § 380, it is stated that 'A trespasser on lands is subject to liability for bodily harm caused to the possessor thereof * * * by any * * * condition created by the trespasser while upon the land irrespective of whether the trespasser's conduct is such as would subject him to liability were he not a trespasser.' And in comment c to this section, it is said: 'It is, therefore, not necessary to the liability of the trespasser that his conduct should be intentionally wrongful or recklessly or negligently disregardful of the interests of the possessor * * *. Thus, one who trespasses upon the land of another incurs the risk of becoming liable for any bodily harm which is caused to the possessor of the land * * * by any conduct of the trespasser during the continuance of his trespass no matter how otherwise innocent such conduct may be.' And in comment f to § 163, it is said: 'So too, he (a trespasser) is liable for any harm to the possessor * * * if such harm is caused by the actor's presence on the land, irrespective of whether it was caused by conduct which, were the actor not a trespasser, would have subjected him to liability.'

"The authorities uniformly support the principle thus stated; see, for example: Troth v. Wills, 8 Pa. Superior Ct. 1; Newsom v. Meyer, 102 Conn. 93, 128 A. 699; Brackett v. Bellows Falls Hydro-Electric Corporation, 87 N. H. 173, 175 A. 822; Ham v. Maine-New Hampshire Interstate Bridge Authority, 92 N. H. 268, 275, 30 A. 2d 1, 6; Van Alstyne v. Rochester Telephone Corporation, 296 N. Y. S. 726; Keesecker v. G. M. McKelvey Co., 141 Ohio St. 162, 170-172, 47 N. E. 2d 211, 215, 216; Wyant v. Crouse, 127 Mich. 158, 86 N. W. 527; Cribbs v. Stiver,

181 Mich. 82, 147 N. W. 587; Bouillon v. Laclede Gas Light Co., 148 Mo. App. 462, 129 S. W. 401."

In Card v. Wenatchee Valley Gas & Electric Co., 77 Wash. 564, 137 P. 1047, deceased came in contact with an electric power transmission line unlawfully maintained across his property. Deceased was irrigating on his land under defendant's transmission line. He had a length of wrought iron pipe about 20 feet long, which came in contact with defendant's transmission line. In that case, the court said: "It is finally argued that the deceased was negligent in allowing the pipe in his hands to come in contact with the wire. This, we think, was also a question for the jury, and could not be determined as a matter of law, in view of the facts we have noticed; especially in view of the fact that deceased was where he had a right to be, engaged in his usual avocation, that appellant's wire was suspended over his land without right, and it not being shown that deceased had knowledge of the extremely dangerous character of the current carried on the wire."