BARBARA HALEY & another[1] vs. MOYEN CONSTRUCTION
CORP. & another.[2]

Plymouth.   May 5, 1980. — August 4, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Negligence,* Assumption of risk, Contractor, One owning or controlling
real estate. *Nuisance. Trespass.  Collateral Estoppel.*

At the trial of a negligence action, there was no error in the judge's in-
structions with respect to assumption of risk.  [242]

The defense of assumption of risk was available to defendants whether an
action was characterized as one for negligence or one for a nonpur-
poseful trespass.  [243-244]

In a negligence action against the owner of property and a contractor per-
forming work on the property for injuries to one of the plaintiffs when
she fell amid the debris of the construction work, error in directing a
verdict for the owner on the ground assigned was inconsequential since
the finding against the plaintiffs and for the contractor with respect to
assumption of the risk should extend by way of collateral estoppel to
defeat the plaintiffs' claim regarding the owner.  [244-245]

TORT.  Writ in the Superior Court dated November 5,
1973.

The case was tried before *Sgarzi,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Mario P. Alfieri (Robert C. Betters* with him) for the
plaintiffs.

*Francis J. Lynch* for Mayflower Cooperative Bank Corp.

*Louis Barsky* for Moyen Construction Corp.

KAPLAN, J.  The plaintiffs were defeated by a defense of
assumption of risk which they were content to assume was

---

[1] Wendell Haley.

[2] Mayflower Cooperative Bank Corp.

unaffected by 1969 legislation introducing a scheme of comparative negligence in the Commonwealth. The question whether comparative negligence should be held to displace assumption of risk was not raised by the plaintiffs, and we leave it untouched.[3] We deal, then, with conventional assumption of risk.[4]

The plaintiffs, husband and wife, sued Moyen Construction Corp. (contractor) and Mayflower Cooperative Bank Corp. (bank) in Superior Court, Plymouth County, for injuries to the wife and consequential damage to the husband caused, so it was alleged, by negligence of the defendants. Trespass and nuisance were also alleged.[5] At the close of the plaintiffs' case, the judge directed a verdict for the bank. The action continued against the contractor and, when all the evidence was in, a special verdict was taken with the jury finding in answer to the first question that the plaintiff wife assumed the risk of injury (this rendered answers to other questions unnecessary).[6] Accordingly judgment entered for both defendants.[7] The plaintiffs' appeal on

---

[3] By St. 1969, c. 761, § 1, the Legislature replaced contributory negligence with a régime of comparative negligence for all actions arising on or after January 1, 1971. See G. L. c. 231, § 85. In 1973 the Legislature amended § 85 to state additionally, "The defense of assumption of risk is hereby abolished in all actions hereunder," effective as to claims arising on or after January 1, 1974. The accident here occurred on June 17, 1973.

The question of the supersession of assumption of risk by comparative negligence has received varying answers. Compare *McConville* v. *State Farm Mut. Auto. Ins. Co.*, 15 Wis. 2d 374 (1962), with *Kennedy* v. *Providence Hockey Club, Inc.*, 119 R.I. 70 (1977).

[4] The question of fact was thus whether Mrs. Haley confronted "truly obvious risks," which were "knowingly and voluntarily undertaken." *Poirier* v. *Plymouth*, 374 Mass. 206, 227 (1978).

[5] The plaintiffs at trial represented that the "primary thrust" of their case was negligence.

[6] Other questions put to the jury, which they were not to answer if their answer to the first question was Yes, dealt with whether the accident occurred at a spot where Mrs. Haley "had a right to be"; if so, whether the contractor was negligent; what was the amount of the damages suffered by the plaintiffs; whether Mrs. Haley was negligent; if so, what was the comparative negligence of Mrs. Haley and the contractor.

[7] A subsequent motion for new trial was denied.

points of law raised below reaches this court by transfer on our own motion. We affirm.

These were the facts. The plaintiffs resided at No. 97 Court Street, Plymouth, and jointly owned the house opposite, No. 96, which they operated as a rooming house. As one crossed the street from No. 97 to No. 96, one saw No. 94, a private house, to the left, with an alley between some fifteen to twenty feet wide, and No. 98, also a private house, to the right, with an alley between about six to eight feet. In June, 1973, No. 94 was owned by the bank and being converted by the contractor into a bank unit by means of structural changes which included dismantling a chimney and removing interior plaster and lathing.

On the afternoon of June 17, a Sunday, Mrs. Haley wanted to get into the cellar with an outside entrance at the center rear of No. 96, in order to locate a bed she would need the next day. She crossed the street and, looking to the left of No. 96, discovered that there was a dense, tangled mass of debris spread through that alley, obviously the temporary outflow of the construction work at No. 94. Mrs. Haley had the alternatives of making her way down that alley, or going through No. 96 to the rear, or walking down the alley to the right. The first route, the one she took ordinarily, now involved a chance of accident; the second, a possible embarrassment, as she would have to pass through a room which might have been let to a roomer (she did not say whether it had been); the third, some discomfiture, because she might set off barking by a Labrador, secure behind the fence of No. 98 (Ulber Tarantino, owner of that house, would not object to Mrs. Haley's using the cement path running the length of the alley on his side of the property line). Mrs. Haley chose the first course and picked her way in gingerly fashion to the cellar. After finding the bed, Mrs. Haley, emerging from the cellar, again faced a similar choice. She elected to return through the debris, and this time she stumbled and fell, suffering back and neck injury. It needs to be added that some of the testimony put the property line between Nos. 94 and 96 at eleven inches from No. 96, other

testimony at five to six feet. In all probability, Mrs. Haley passed from one to the other side of the line (wherever exactly it was located) as she made each trip. She fell toward No. 94, but whether the length of her body on falling was wholly to one side or the other of the line, or across it, must remain in doubt.[8] To round out the facts, the evidence allowed an inference that rubbish had accumulated in the alley before the weekend of June 16, and that the bank sent representatives to check on the progress of the construction and had opportunity to observe the condition.

1. *Liability of the defendant contractor.* (a) The first question put to the jury, and answered by them affirmatively, was: "Did the plaintiff, Barbara Haley, knowingly assume the risk of injury?" The judge's instructions tried hard to put the concept to the jury in intelligible form consistent with the decided cases. There was objection that a supplemental charge in response to a request from the jury did not sufficiently stress the requirement that Mrs. Haley must comprehend fully the risks involved and assume them voluntarily. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 882 (1978); *Crone* v. *Jordan Marsh Co.*, 269 Mass. 289, 291 .(1929); *Fitzgerald* v. *Connecticut River Paper Co.*, 155 Mass. 155, 158 (1891). Again the plaintiffs complained that that charge did not adequately stress the "subjective" element in assumption of risk. See *Uloth, supra; Kitchen* v. *Women's City Club*, 267 Mass. 229, 231 (1929). But we think these criticisms are not well founded; as to the last, the plaintiffs miss the point that state of mind may be inferred from external signs. See *McCarthy* v. *Morse*, 197 Mass. 332, 335-336 (1908); W. Prosser, Torts § 68, at 448 (4th ed. 1971); Restatement (Second) of Torts § 496D, Comment d (1965).[9]

---

[8] Mrs. Haley testified at trial that the fall was on her property, but had admitted in interrogatories (read to the jury by the contractor) that "I may have been slightly on defendant's property immediately before [the] accident." Mrs. Haley also testified conveniently at trial that she had fallen eleven inches from No. 96.

[9] On the question of "subjectiveness," the plaintiffs thought Mrs. Haley's professed fear of trespassing on Tarantino's alley walk called for special

(b)  There is no suggestion that the evidence was insuffi-
cient to warrant the jury in their answer "Yes" to the ques-
tion, and, as indicated above, the plaintiffs are not in a posi-
tion to urge that assumption of risk was not a permissible
defense to the case so far as it was premised on negligence.
But the plaintiffs seek to argue that the defense was not
available to so much of the case as was predicated on
"trespass" (or "nuisance," not differentiated significantly
here from trespass).[10]  By instructing the jury that they need
not go beyond the first question if their answer to it was af-
firmative, the judge was holding implicitly that the defend-
ant could defend on assumption of risk even if the facts were
taken in their best light for the plaintiffs, i.e., that Mrs.
Haley tripped over debris on her side of the line where she
was thoroughly privileged to be.  The judge's implicit ruling
was correct, for the authorities have not distinguished, for
purposes of the availability of the defense, between defend-
ant's negligence and defendant's relatively innocent, or
nondesigning, or nonpurposeful trespass.  See *Sherman* v.
*Fall River Iron Works Co.*, 2 Allen 524, 526 (1861); *Fresno
Air Serv.* v. *Wood*, 232 Cal. App. 2d 801, 807 (1965); *Con-
nolley* v. *Omaha Pub. Power Dist.*, 185 Neb. 501, 508
(1970); *Kopka* v. *Bell Tel. Co.*, 371 Pa. 444, 453 (1952).  See
also 2 F. Harper & F. James, Torts § 22.8, at 1222 (1956).
Cf. *Victor* v. *Sell*, 301 Minn. 309, 314-315 (1974) ("inten-
tional" trespass).  The facts would not warrant a trier in at-
taching a harsher characterization to the trespass here.

We have dealt thus seriously with the argument about
"trespass" even though there is considerable doubt whether
it was advanced below, or advanced with sufficient clarity.[11]

---

attention in the instructions, but the judge cannot be faulted for declining
to highlight evidence supposedly favorable to one side.

[10] For private nuisance as a kind of continuing trespass, see *Hakkila* v.
*Old Colony Broken Stone & Concrete Co.*, 264 Mass. 447, 452 (1928). See
also *United Elec. Light Co.* v. *Deliso Constr. Co.*, 315 Mass. 313, 321
(1943).

[11] The plaintiffs did not urge at trial that assumption of risk was
unavailable as a defense to trespass or nuisance.  (Indeed certain of their

Moreover there is a certain unreality in seeking to make liability turn here on niceties of location.[12]  The plaintiffs indeed almost admit as much when they say the "primary thrust" of their case was negligence.

2. *Liability of the defendant bank.*  In directing a verdict for this defendant, the judge evidently believed that it had shed responsibility for the spillage of debris by contracting for the construction with an "independent contractor." However, there is doubt whether the contracting-out can absolve the owner of responsibility for an unreasonably dangerous condition created by the contractor, where the owner has knowledge of the condition.  See *Rockport* v. *Rockport Granite Co.,* 177 Mass. 246, 255 (1901); *Kraus* v. *Alamo Nat'l Bank,* 586 S.W.2d 202, 206 (Tex. Civ. App. 1979); *Ventoza* v. *Anderson,* 14 Wash. App. 882, 896 (1976); Restatement (Second) of Torts § 414A (1965).  But if there was error in directing the verdict for the bank on the ground assigned — a matter we do not decide — the error was inconsequential, since the finding against the plaintiffs and for the defendant contractor with respect to assumption of risk should extend by way of collateral estoppel to defeat the plaintiffs' claim regarding the bank.  See *Carpenter* v. *Suffolk Franklin Sav. Bank,* 370 Mass. 314, 322 (1976); *Maher* v. *General Motors Corp.,* 370 Mass. 231, 234 (1976); Restatement (Second) of Judgments § 88 (Tent. Draft No. 3, 1976).

---

proposed instructions intimated that the defense was available in those circumstances.)  Their objection was to the judge's omission to give a proposed instruction attempting to indicate what would be a trespass or nuisance on the part of the contractor, but without any attempted connection to assumption of risk.

[12] Cf. Cardozo, J., in *Hynes* v. *New York Cent. R.R.,* 231 N.Y. 229 (1921).

With uncertainty about just where Mrs. Haley walked or fell, the plaintiffs were perhaps advantaged by the judge's omission to charge at their request that "[p]rovided plaintiff was not a trespasser," the contractor's duty to her was the same regardless of whether she was owner, licensee, or invitee.

There is nothing in the idea that a jury might be unjustly predisposed in favor of the contractor because they observed the bank being let off (we assume, improperly) early in the case. This is speculative at best, and seems intrinsically unlikely, as the responsibility of the contractor on the scene would appear more direct than the bank's.

*Judgments affirmed.*